LUTTIG, Circuit Judge,
dissenting:
Assuming arguendo that the other requirements for contract carriage are met, I disagree with the majority that the bilateral contract requirement set forth in 49 C.F.R. § 1053.1 has been adequately satisfied. Accordingly, I dissent.
The majority never actually holds that the contract is bilateral, nor could it, given the explicit contractual provision that Panasonic has no obligation whatsoever to transport any shipments with Allegheny. J.A. at 49 (“Nothing herein shall require, or be construed to require, Customer to transport any shipments with Carrier, or otherwise use any services of Carrier. Customer does not guarantee any minimum number of shipments, tonnage, or revenue.”). And it is unclear on what basis the majority believes the bilateral contract requirement is satisfied. But it appears to rest its conclusion on one of two grounds, either that Allegheny made 600 shipments on Panasonic’s behalf, a number that, the majority reasons, itself confirms that a bilateral contract existed, ante at 317-318 (emphasizing the number of shipments made here compared with the number in other cases), or that, under the ICC’s decision in General Mills, Inc., 8 I.C.C.2d 313, aff'd, No. 4-89-345 (Bankr.D.Minn. Aug. 27,1992), appeal submitted, No. 93-1232 (8th Cir. Oct. 11, 1993), “substantial compliance” with the other requirements for contract carriage renders compliance with the bilateral contract requirement unnecessary, ante at 317. Neither ground (nor, for that matter, the two in combination), in my view, is sufficient to meet the explicit requirement that carriage contracts be bilateral.
■ Assuming that the majority rests its conclusion on the fact that 600 shipments were undertaken by Allegheny at Panasonic’s request, I am at a loss to understand how the performance of a particular number of shipments even relates to the existence or not of a bilateral contract. Both parties to a contract either have or have not undertaken obligations by the terms of the instrument. If one party has no obligation under the contract, none is created by the fact that he engages the other party daily, or even continuously, in the performance of the other party’s contractual obligations.
If the majority rests its conclusion instead on the belief that General Mills renders compliance with the bilateral contract provision unnecessary if there is “substantial compliance” with the other contract carriage requirements, then I believe the majority has misread General Mills. There, the ICC found “substantial compliance” with section 1053.1 precisely because the agreement in question was “clearly a bilateral agreement in writing.” 8 I.C.C.2d at 323. As the Commission emphasized, “[the agreement] imposed obligations on both parties. General Mills agreed to tender shipments to United and pay for the services provided under the contract.” Id. It is true, as the majority notes, that the agreement in General Mills did “ ‘not specifically reference a number of shipments to be tendered,’” ante at 317 *319 (quoting General Mills, supra, at 828), and that this fact did not in the Commission’s view negate the existence of a bilateral contract. However, this is because the agreement did impose on General Mills an obligation to tender some number of shipments. If the General Mills agreement, like the agreement in this case, had not imposed an affirmative obligation on both parties, the ICC would not, because it could not have consistently with either section 1053.1 or basic principles of contract law, have found an intent to form a contract in the first place.
Because Panasonic indisputably had no obligation whatsoever under its contract with Allegheny, the contract was not bilateral, and therefore it cannot be considered a contract for carriage under the terms of 49 C.F.R. § 1053.1.